**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ALISA L.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 25-17381 (GC)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Plaintiff Alisa L.'s[1] appeal from the final decision of the Commissioner of the Social Security Administration (Commissioner)[2] denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* After careful consideration of the entire record, including the entire Administrative Record, the Court decides this matter without oral argument in accordance with Federal Rule of Civil Procedure (Rule) 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, the Court **AFFIRMS** the Commissioner's final decision.

---

1 Plaintiff is identified by first name and last initial. *See* D.N.J. Standing Order 2021-10.

2 Frank Bisignano became the Commissioner of the Social Security Administration on May 7, 2025. This change has no bearing on the instant matter. *See* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

# I. BACKGROUND

## A. Procedural History

Plaintiff was born on December 24, 1985, has some college education, and worked in accounting and as a caregiver, customer service representative, lifeguard, and secretary. (AR 272, 290.)[3] On August 14, 2023, Plaintiff filed applications for DIB and SSI, alleging that she became disabled as of March 1, 2018. (*Id.* at 75-76, 84-85.) Plaintiff alleged that she could not work due to her anxiety and post-traumatic stress disorder (PTSD). (*Id.* at 271.) The applications were denied on March 5, 2024. (*Id.* at 110-118.) Upon reconsideration, Plaintiff's claims were denied again on July 18, 2024. (*Id.* at 128-134.) On July 31, 2024, Plaintiff filed a request for a hearing before an Administrative Law Judge (ALJ). (*Id.* at 135-137.) That hearing took place on January 8, 2025. (*Id.* at 30-74.)

On April 2, 2025, the ALJ issued Plaintiff an unfavorable decision, finding Plaintiff not disabled from the alleged onset date to the date of the ALJ's decision. (*Id.* at 14-24.) Plaintiff requested a review of the ALJ's decision before the Appeals Council, and on September 12, 2025, the Appeals Council denied that request. (*Id.* at 1-6.) Thus, the ALJ's decision became the Commissioner's final decision. (*Id.*) On November 12, 2025, Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g), challenging the ALJ's decision. (ECF No. 1.)

---

[3] "AR" refers to the Administrative Record, available at ECF No. 4. This Memorandum Opinion cites the internal page numbers when referring to the Administrative Record. Page numbers for all other docket citations refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

### B. The ALJ's Decision

The ALJ used the requisite five-step sequential evaluation process to determine that Plaintiff is not disabled. (AR 15-16.) *See also* 20 C.F.R. § 416.920(a)(4) (describing the five-step process).

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2018 and "has not engaged in substantial gainful activity since March 1, 2018, the alleged onset date." (AR 16.)[4]

At step two, the ALJ found that Plaintiff "has the following severe impairments: anxiety and obsessive-compulsive disorder; and PTSD[.]" (*Id.* at 17.) The ALJ noted that these medically determinable impairments "significantly limit [Plaintiff's] ability to perform basic work activities," and thus are severe. (*Id.*) The ALJ found that Plaintiff's other impairments, including COVID-19 and anemia, were not severe because "the medical evidence of record reflects that they have not caused more than minimal limitation in the claimant's ability to perform basic work" when considering the impairments in isolation and in combination. (*Id.*) The ALJ noted that he "considered all of the claimant's [medically determinable impairments], including those that are not severe," when assessing her residual functional capacity (RFC) later in the ALJ's decision. (*Id.*)

At step three, the ALJ found that none of Plaintiff's impairments nor any combination of impairments met or medically equaled the severity of any of the impairments listed in the

---

4 "Substantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. § 416.972. Substantial work activity "involves doing significant physical or mental activities. [A claimant's] work may be substantial even if it is done on a part-time basis or if [the claimant] do[es] less, get[s] paid less, or ha[s] less responsibility than when [the claimant] worked before." *Id.* § 416.972(a). "Gainful work activity is work activity that [a claimant] do[es] for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." *Id.* § 416.972(b).

applicable regulation. (*Id.*) *See also* 20 C.F.R. § 416.925(a) (regulation pointing ALJs to "appendix 1 of subpart P of part 404 of this chapter").

At step four, the ALJ conducted an RFC assessment to determine whether Plaintiff could perform the requirements of her past relevant work. (AR 19-22.)[5] The ALJ concluded that Plaintiff:

> has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant understands, remembers, and carries out simple instructions; occasionally adjusts to changes in workplace routines; maintains contact occasionally with supervision and coworkers, never with the public, and works with exposure up to, but not above, Moderate Noise Intensity Level.

(*Id.* at 19.) To arrive at this conclusion, the ALJ stated that he "considered all [of Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (*Id.* (citing 20 C.F.R. §§ 404.1529, 416.929 and Social Security Ruling (SSR) 16-3p (Evaluation of Symptoms in Disability Claims), 2017 WL 5180304 (Oct. 25, 2017)).) The ALJ also considered "the medical opinion(s) and prior administrative medical findings[.]" (*Id.*)

In considering Plaintiff's symptoms, the ALJ stated that he must follow a two-step process. First, the ALJ must determine whether "there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms." (*Id.*) Second, if there is such an impairment, the ALJ would then evaluate "the intensity, persistence, and limiting effects" of the symptoms "to determine the extent to which they limit the claimant's work-related activities." (*Id.*) In making this evaluation, if Plaintiff's

---

[5] Residual functional capacity is defined as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a).

statements about intensity, persistence, and limiting effects "are not substantiated by objective medical evidence," the ALJ stated he must consider "other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." (*Id.*)

Applying these standards, the ALJ reviewed Plaintiff's testimony and medical history to find step one satisfied. (*Id.* at 19-20.) The ALJ then proceeded to step two and found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.* at 20.)

The ALJ then discussed the role that medical opinions played in his RFC assessment. (*Id.* at 21-22.) The ALJ found the opinions of Dr. Robert Champion and Dr. Angela Fairweather—the State Agency consultants—"mostly persuasive." (*Id.* at 22.) The ALJ found the opinion of Plaintiff's psychotherapist, Patricia Alvarado, MA, "at best, partially persuasive." (*Id.*) The ALJ also reviewed the consultative psychological evaluations of Dr. AnnaMarie Resnikoff and Dr. David M. Gelber. (*Id.* at 21.) The ALJ based his RFC assessment on the above considerations and noted that Plaintiff had "no past relevant work." (*Id.* at 22 (citing 20 C.F.R. §§ 404.1565 and 416.965).)

Finally, at step five, the ALJ considered whether jobs exist in the national economy that Plaintiff could perform given her age, education, work experience, and RFC results. (*Id.* at 23-24.) Based on hypothetical questions posed by the ALJ, a vocational expert testified that Plaintiff could perform jobs such as a floor waxer, industrial cleaner, routing clerk, and assembler of small products. (*Id.* at 23.) The ALJ determined that the vocational expert's testimony was consistent with the Dictionary of Occupational Titles. (*Id.*) Therefore, the ALJ concluded that "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in

the national economy." (*Id.* at 23-24.) As a result, the ALJ concluded that Plaintiff was not disabled for DIB and SSI purposes. (*Id.* at 24.)

## II. LEGAL STANDARD

### A. Standard of Review

The Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). In conducting this review, the Court is "not permitted to re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citation omitted). Instead, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and "supported by substantial evidence." *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citation omitted).

Substantial evidence is "defined as 'more than a mere scintilla'; it means 'such relevant evidence as a reasonable mind might accept as adequate.'" *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Evidence is not substantial "if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., [evidence] offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "Where the ALJ's findings of fact are supported by substantial evidence," the Court is "bound by those findings, even if [it] would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citation omitted); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Legal issues, in contrast, are subject to a plenary or de novo review. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 208 n.10 (3d Cir. 2019) ("We exercise plenary review over legal conclusions reached by the Commissioner . . . .") (quoting *Chandler*, 667 F.3d at 359).

### B. Determining Disability

To be eligible for DIB and SSI benefits under the Social Security Act, a claimant must establish that they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The individual's impairment must be severe to the point that the individual cannot engage in his or her previous work or in "any other kind of substantial gainful work which exists in the national economy," *i.e.*, work that exists in significant numbers either in the region where the individual lives or in several regions of the country. 42 U.S.C. § 1382c(a)(3)(B); *Plummer*, 186 F.3d at 427-28. A physical or mental impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). Disability determinations are made individually "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citation omitted).

### C. Sequential Evaluation

The Social Security Administration has developed a sequential, five-step process for evaluating disability claims. The process considers whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f)). "The evaluation will continue through each step unless it can be determined at any point that the claimant is or is not disabled." *Rios v. Comm'r of Soc. Sec.*,

444 F. App'x 532, 534 (3d Cir. 2011) (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the ultimate burden of proof at the first four steps, at which point the burden shifts to the Commissioner at the fifth step. *See Hess*, 931 F.3d at 201 ("The burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security.") (citation omitted).

## III. DISCUSSION

Plaintiff makes one argument in support of her appeal: "the mental RFC is not reflective of the substantial evidence of record[.]" (ECF No. 5 at 7 (emphasis omitted).) The Commissioner argues the mental RFC is supported by substantial evidence. (ECF No. 7 at 5-6.) On review of the ALJ's decision (*see* AR 14-24) and the Administrative Record (*see generally* ECF No. 4), the Court finds good cause to affirm the Commissioner's decision.

The ALJ determined that Plaintiff had the mental RFC to "maintain[] contact occasionally with supervision and coworkers, [but] never with the public." (AR 20.) Plaintiff contends that this portion of the RFC is not supported by substantial evidence because the ALJ offers "no rationale whatsoever" for why Plaintiff is able to maintain occasional contact with supervisors and coworkers if she cannot maintain any contact with the public and omits "some of the most alarming mental status findings and observations." (ECF No. 5 at 21.)

"Substantial evidence has been defined as more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate." *Plummer*, 186 F.3d 422 at 427 (citation modified). Thus, if the ALJ relies on "more than a 'mere scintilla' of evidence to support his RFC finding, [then] . . . [the] opinion was supported by substantial evidence" and the Court must affirm the ALJ's decision, even if the Court would have decided the matter differently. *Vivino v. Colvin*, Civ. No. 15-6393, 2016 WL 4581408, at *5 (D.N.J. Sep. 2, 2026) (citation omitted); *see also Fargnoli*, 247 F.3d at 38.

Here, the ALJ has satisfied the substantial evidence standard. The ALJ relied on evidence supporting a finding that, even if Plaintiff could not maintain contact with the public, she could maintain occasional contact with co-workers and supervisors. This is because the ALJ cited evidence indicating that Plaintiff's anxiety has decreased and that she exhibits lower-level functioning when communicating with individuals with whom she is unfamiliar (such as the public) as compared to individuals with whom she is more familiar (such as colleagues or supervisors). For example, the ALJ cited Plaintiff's testimony for the proposition that Plaintiff "has difficulty around people she *does not know*." (AR 20 (emphasis added) (citing AR 53)); (*see also id.* at 53 (Plaintiff testifying that her "fear comes in" when interacting with "strange, unfamiliar people," and people she does not "know very well").)[6] The ALJ further relied on evidence from 2024 in which Plaintiff reported that her anxiety level went down, her attention was "normal," and "she was cooperative" with the medical professional evaluating her. (*Id.* at 21 (citing AR 757-758).) Also in 2024, the state-agency medical consultants determined that Plaintiff had "moderate[] limit[ations]" in her ability to interact "with the general public" but her ability "to get along with coworkers or peers" and to "accept instructions and respond appropriately to critics from supervisors" was "[n]ot [s]ignificantly [l]imited." (*Id.* at 98, 106); (*see also id.* at 22 (citing AR 98, 106).)[7] The ALJ therefore cited "more than a mere scintilla" of evidence from which a

---

[6] Plaintiff also testified that "the edge [was] taken off . . . sometimes within an hour" of meeting people, but at the time of her testimony, increased exposure to individuals with whom she was acquainted did not help. (AR 53-54.) While this evidence may allow an individual to formulate an RFC different from the one formulated by the ALJ, the Court may not "re-weigh the evidence or impose [its] own factual determinations," *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citation omitted), even if the Court would have decided the matter differently upon such a re-weighing, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

[7] The ALJ agreed that Plaintiff had "moderate limitations" in "interacting with others." (AR 18.) Courts have upheld similar mental RFCs under these circumstances. *See* A*nthony P. v. Comm'r of Soc. Sec.*, Civ. No. 21-17714, 2023 WL 6806008, at *9 (D.N.J. Oct. 16, 2023)

reasonable person could determine that Plaintiff was able to maintain occasional contact with colleagues. *Plummer*, 186 F.3d 422 at 427; *Vivino*, 2016 WL 4581408, at *5.[8]

As for omitted information, Plaintiff argues that the ALJ failed to cite key materials from consultative psychological evaluations by Dr. AnnaMarie Resnikoff and Dr. David M. Gelber in 2024. (ECF No. 5 at 21-27, 31-32; *see also* AR 541-543, 589-593.) With respect to Dr. Resnikoff—who reported that Plaintiff was "pleasant" and "cooperative"—Plaintiff contends that the ALJ failed to mention that, among other omissions, (1) Dr. Resnikoff was not able to review Plaintiff's previous psychological records, and (2) the consultation occurred virtually rather than in person which resulted in a more positive review. (ECF No. 5 at 23-26.) With respect to Dr. Gelber, Plaintiff notes that the ALJ omitted certain lines from Dr. Gelber's report:

> [Plaintiff]'s affect shows marked lability. Her mood ranges from severely to markedly anxious, and markedly depressed. On entry she is severely anxious, difficulty breathing, sweating, face blotchy, and quavering voice. As rapport is developed her anxiety diminishes slightly. Her presentation is consistent with diagnoses of Post Traumatic Stress Disorder and Major Depressive Disorder.

(*Id.* at 31 (citing AR 591).) Plaintiff contends it is notable that even after Dr. Gelber established "some sort of non-threatening rapport," Plaintiff's symptoms "diminished only 'slightly.'" (*Id.* (citing AR 591).)

The Court finds that remand is not warranted on the basis of this omitted information. An ALJ is not required to "set forth and analyze every piece of evidence in the record." *Santiago v.*

---

(affirming RFC limited to "occasional interactions with coworkers or supervisors, and no interaction with the public" when ALJ determined the limitations were "moderate").

[8] This matter is therefore unlike *Loiska J. v. Comm'r of Soc. Sec.*, Civ. No. 24-00269, 2026 WL 100512 (D.N.J. Jan. 14, 2026), on which Plaintiff relies, (*see* ECF No. 5 at 28-30), because in that case, the court reasoned that "it [was] not clear" why the plaintiff could interact with certain categories of people but not others, *see Loiska J.*, 2026 WL 100512, at *10.

*Barnhart*, Civ. No. 02-4506, 2006 WL 8449259, at *4 (D.N.J. Aug. 8, 2006), *aff'd sub nom.*, *Santiago v. Comm'r of Soc. Sec.*, 273 F. App'x 211 (3d Cir. 2008) (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)). Rather, "the ALJ must note the essential considerations upon which the decision was based, with sufficient specificity so as to enable the reviewing court to decide whether the disability determination was supported by substantial evidence." *Id.* Here, the ALJ discussed both reports, (*see* AR 21), and the fact that the ALJ failed to cite all the information in those reports does not prevent the Court from being able to determine that the mental RFC is supported by substantial evidence. Regardless of the fact that Plaintiff had one interview virtually and that her comfort level only increased "slightly" during her in-person consultation, substantial evidence supports the finding that Plaintiff could engage in occasional interactions with colleagues and supervisors.[9] Under the highly deferential substantial evidence standard, remand in this case would therefore be improper.[10]

---

[9] Indeed, the fact that Plaintiff became "slightly" more comfortable with Dr. Gelber over the course of one meeting, (AR 591), supports—rather than casts doubt on—the ALJ's RFC determination that Plaintiff could maintain occasional contact with her colleagues, individuals with whom she will spend more than one meeting.

[10] Plaintiff also argues that the ALJ failed to explain the evidentiary weight he afforded to Dr. Resnikoff's or Dr. Gelber's report. (ECF No. 5 at 27.) In opposition, the Commissioner argues that the ALJ "was not required to assign 'weight' or 'persuasiveness' to these reports because they did not express medical opinions." (ECF No. 7 at 9 (citing 20 C.F.R. §§ 404.1520c, 416.920c).) Plaintiff has not submitted a reply brief to contest the Commissioner's argument. In any event, even if the ALJ were required to articulate the persuasiveness of either report, any failure to do so would be harmless error because, even giving full consideration to these reports, the RFC is supported by substantial evidence. *See Roby v. Kijakazi*, Civ. No. 22-1886, 2024 WL 197438, at *9 (W.D. Pa. Jan. 18, 2024) ("[A]ny error committed by the ALJ in his evaluation of supportability [or consistency] regarding the persuasiveness of [the medical expert's] opinions was harmless [because] it did not impact the outcome." (citation modified)).

## IV. CONCLUSION

For the foregoing reasons, and other good cause shown, the Commissioner's final decision is **AFFIRMED**. An appropriate Order follows.

Dated: September 3, 2026

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE